Aquí tienes la traducción al inglés del documento legal redactado para presentarse como una querella a nivel federal:

---

MONICA GISELLE PEREZ TAVAREZ

Plaintiff

v.

LUMA ENERGY; Insurance Company X

Defendants

RECEIVED AND FILED
CLERK'S OFFICE USDC PR

2025 MAY 6 PM 3:33

CIVIL NO. 25-cv-1252 JAG

CLAIM FOR DAMAGES DUE TO UNJUST DISMISSAL: DISCRIMINATION, RETALIATION, WORKPLACE HARASSMENT, HOSTILE WORK ENVIRONMENT

ADA; Act No. 44; Act No. 100; Act No. 115; Act No. 90; Act No. 69; Act No. 80 and Act No. 2 of October 17, 1961 (32 L.P.R.A. §3118 et seq.)

---

## COMPLAINT

TO THE HONORABLE COURT:

Comes now the plaintiff, through her undersigned legal representation, and respectfully STATES, ALLEGES, and PRAYS:

## INTRODUCTION

This action is brought to vindicate the rights of Monica Giselle Perez Tavarez under the laws that prohibit discrimination based on sex, retaliation, workplace harassment, and discrimination against mental disabilities. This includes Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), Act No. 44, Act No. 100 (29 L.P.R.A. §467 et seq.), Act No. 69 (29 L.P.R.A. §1321 et seq.), as well as the provisions that prohibit hostile work environment (Act No. 90 of 2020), unjust dismissal (Act No. 80), and retaliation (Act No. 115) for opposing and reporting discriminatory practices and hostile work environments against her former employer, LUMA Energy.

## JURISDICTION

1. Jurisdiction is invoked before this Honorable Court under the provisions of Act No. 2 of October 17, 1961, as amended (32 L.P.R.A. §3118 et seq.).

## THE PARTIES

2. Plaintiff Monica Giselle Perez Tavarez is a single adult woman, an engineer, and a resident of Gurabo, Puerto Rico. Her physical address is Ciudad Jardín, Urb. Los Sueños, Calle 14-147, Gurabo, PR 00778-0106; her mailing address is Alturas de San Pedro, Calle San Cristóbal O-42, Fajardo PR 00738. Plaintiff is 27 years old and suffers from Major Depressive Disorder and severe anxiety episodes.
3. Defendant LUMA ENERGY LLC is the operator of Puerto Rico's electrical system, with headquarters in San Juan and other municipalities in Puerto Rico. Upon information and belief, it is a for-profit domestic corporation organized under the laws of Puerto Rico, with legal personality and the capacity to sue and be sued. Its principal offices are located at Ave. Fernandez Juncos #644, Suite 301, San Juan, PR 00907-0000.
4. Co-defendant, INSURANCE COMPANY X (fictitious name, as the real name is unknown), is a corporation organized under the laws of Puerto Rico and/or authorized to do business in Puerto Rico. It is engaged in the insurance business and, during the timeframes mentioned herein, had a valid insurance contract with the defendants to cover actions, omissions, and/or damages caused by their agents and/or employees to third parties, such as those described in this complaint.

## FACTS COMMON TO ALL CAUSES OF ACTION

5. Ms. Monica Giselle Perez Tavarez was employed by LUMA Energy from September 26, 2022, to February 14, 2025.
6. During that time, she held the position of "Technical Specialist I: Transmission Planner."

7. Plaintiff's talent and performance were recognized as highly successful by various company managers, including Mr. Noel Rivera, Executive Director of the Transmission and Distribution Department.
8. At the time of her dismissal, Plaintiff had an annual salary of fifty-five thousand dollars ($55,000.00). In addition, she received bonuses and non-discretionary compensation equivalent to 3% of her salary, bringing her total annual compensation in 2023 to fifty-seven thousand six hundred eighty dollars ($57,680.00).
9. In 2023–2024, LUMA underwent a restructuring process that resulted in Plaintiff being reassigned to four different supervisors: Miguel Irizarry (Manager, Distribution Planner); Yao Yu (Manager, Transmission Planner); Cory Smith (Manager, Transmission Planner); Alex Nacif (Manager, Advance Planning); Noel Rivera (Executive Director of Planning); Daniel Haughton (Executive Director of Planning); and lastly, Taisha Rosa (Manager, Transmission Planner), who ultimately changed the department's administrative structure.
10. From then on, Plaintiff reported to the "Department of Planning, Distribution, Transmission and Network Advancements," led by Ms. Taisha Rosa (Manager, Transmission Planner) as of May 2024.
11. The restructuring occurred during the pandemic, so all work was performed remotely.
12. On November 15, 2023, Plaintiff emailed her supervisor, Daniel Haughton, requesting to be assigned tasks.
13. This request was due to the fact that all assignments were being given to her two male coworkers, Jayson and Rubén.
14. In early May 2024, Plaintiff had a medical emergency that led her to take medical leave.
15. Shortly after, on May 15, 2024 (during a Transmission Planning Department meeting), Plaintiff's supervisor, Ms. Taisha Rosa, commented that she hoped there would be no more "emergencies" so that "the work could be finished," clearly referring to Plaintiff's medical emergency. This comment caused Plaintiff discomfort and frustration, as emergencies are unexpected and beyond her control.
16. Then, on May 17, 2024 (during another Transmission Planning Department meeting), Ms. Taisha Rosa raised her voice at Plaintiff and reprimanded her in front of the team, stating that "we are not understanding each other" and that Plaintiff "should speak with her coworkers Jayson and Rubén before submitting short-circuit analysis reports."
17. On May 24, 2024 (during another Transmission Planning Department meeting), Ms. Taisha Rosa publicly reprimanded Plaintiff in a raised voice for not having delivered an assignment (Load Pockets). Plaintiff clarified that she had not completed it due to missing data and preferred to discuss the matter later or receive an email with the necessary clarifications.
18. On May 28, 2024, the complainant's desk was relocated outside the area where her coworkers from the Transmission Planning Department were located.
19. The aforementioned incidents led the complainant to meet with Ms. Marielis De Jesús (B&PHR) on May 28, 2024, and to file a complaint of a hostile work environment and workplace harassment against her supervisors, Ms. Taisha Rosa and Mr. Daniel Haughton.
20. In response to her hostile work environment complaint, a pattern of retaliation began, culminating in the complainant's termination on February 14, 2025.

21. On June 28, 2024, Human Resources (HR) held a meeting regarding the hostile work environment and harassment complaint and work dynamics with Ms. Taisha Rosa and Mr. Daniel Haughton.
22. That same day, following the meeting, retaliation against the complainant began when she received a ROD from Rosa, alleging that she had not followed instructions regarding her attendance at the SCADA program training. This occurred even though she had been informed by email (her response was: "Thank you for letting me know") and Mr. Daniel Haughton was copied on the message.
23. Dissatisfied with the ROD, the complainant escalated her complaint to HR on July 1, 2024. Ms. Yeidy Ocasio Castañeda handled the complaint related to the ROD.
24. On July 31, 2024, the complainant was called to a meeting where she was given a performance evaluation reflecting a negative assessment of her work performance. During that meeting, the complainant expressed her disagreement and stated that throughout her workday, she had not been assigned substantive tasks or responsibilities, despite repeatedly requesting assignments and receiving no response from her supervisors.
25. On August 2, 2024, the complainant met with Ms. Elisa Pérez, Human Resources Director, to discuss her objections to the performance evaluation results, as well as the prevailing work dynamics in her work environment. During the meeting, the complainant voiced concerns regarding fairness in the evaluation process and the working conditions that were affecting her performance and professional well-being.
26. Specifically, it was mentioned that the complainant's poor evaluation was conducted solely by her current supervisors, who had not supervised her prior to November 2023 (Daniel) or January 2024 (Taisha), and against whom she had filed a complaint. It was also noted that Mr. Yaoyu, Mr. Cory Smith, Mr. Alex Nacif, and Mr. Miguel Irizarri did not participate in the performance evaluation despite having supervised the complainant during the evaluation period.
27. On September 22, 2024, the complainant formally filed a Law 90 complaint for workplace harassment and hostile environment against Ms. Taisha Rosa, Mr. Daniel Haughton, and Ms. Marielis De Jesús from the Human Resources Department (who, in a meeting on August 16, 2024, told her "she should self-reflect and be more humble to bond with the team," mentioning that "her writing style could be the cause of the distance between her and her supervisors Taisha and Daniel").
28. At that moment, the complainant expressed concern about the psychological pressure, discrimination, and isolation she had experienced, which affected her emotional and professional well-being. Among the examples of workplace harassment reported, she mentioned:

    a) Deliberate misinformation and exclusion from communications and meetings;

    b) Unjustified denial of training opportunities;

    c) Unfair penalization (ROD) after attending previously approved training;

    d) Negative performance evaluation without a fair metric;

e) Removal of duties by assigning tasks to other colleagues instead of her, leaving her without a workload;

f) The little work she was assigned was subject to constant changes and ambiguous instructions causing delays;

g) Discriminatory comments regarding her emotional health condition;

h) Ignoring her requests for transfers to another department.

29. On October 11, 2024, the complainant submitted a written request through Microsoft Teams to Ms. Carmen Laureano, expressing her interest in transferring to another department, as she wished to grow professionally and did not feel well in her current position. She received no response to this request.
30. On October 14, 2024, the complainant held a meeting with Ms. Carmen Laureano to discuss the status of the process initiated under Law No. 90-2020. During the meeting, she was informed that, according to an internal evaluation, no indicators were identified to support a finding of workplace harassment, which would lead to the administrative closure of the case. The complainant disagreed with this conclusion, reiterating that the situations presented reflected a pattern of hostile and discriminatory conduct that affected her dignity, performance, and emotional stability in the workplace.
31. On the same date, the complainant again made a verbal request to transfer departments, as she did not feel well in her current position. She received no response to this request.
32. Dissatisfied with the outcome of the alleged investigation into her Workplace Harassment complaint—of which she received no copy—the complainant requested mediation, as established by Law and LUMA's internal regulations. The respondent party was summoned by the mediation office of the Caguas court but refused to participate in the mediation process.
33. Shortly after the closure of the Law 90 investigation, on October 21, 2024, the complainant received a memorandum with a PIP (Performance Improvement Plan) allegedly for poor performance. She formally objected to it in writing, stating it was an act of retaliation by Ms. Taisha Rosa, and no action was taken by the employer to protect the employee who had filed a harassment complaint.
34. On October 28, 2024, the complainant once again submitted a written request expressing her interest in transferring departments, as she wished to grow professionally and did not feel well in her current position. She received no response to this request.
35. On November 4, 2024, the complainant sent an email through the corporate system to Ms. Marielis De Jesús, Business and Partner of the Human Resources Department, with a copy to Ms. Elisa Pérez and Ms. Carmen Laureano. The email stated that she was not emotionally well because the workplace mobbing and humiliation continued, and she reiterated her request for a department transfer. She received no response to this request.
36. On November 11, 2024, the complainant underwent a follow-up evaluation for the "performance improvement" plan 20 days after its initiation. Although the complainant completed all tasks and requirements, the evaluation was again negative, lacked reasonable justification, and reflected a pattern of unequal and punitive treatment. She submitted a written objection but received no response.

37. On December 3, 2024, the complainant received a referral from the Human Resources office to speak with Ms. Ivean Escandón, in charge of reasonable accommodation leave, with whom she held a brief conversation on the same day.
38. Later on December 3, during a second meeting held in the afternoon, the complainant was summoned again and given a second negative follow-up memorandum regarding the "performance improvement" plan by the employer. During this meeting, the complainant stated that the allegations in the memorandum were false and represented clear retaliation against her in response to prior complaints and formal communications. She categorically rejected the allegations and reserved the right to challenge the contents through appropriate legal channels.
39. The following day, December 4, 2024, the complainant was hospitalized at Panamericano Hospital due to a severe episode of depression and anxiety. She remained hospitalized until December 12, 2024.
40. 40. After being discharged, on December 16, 2024, the complainant sent a medical certificate to the respondent, in which a workplace accommodation was requested consisting of an immediate departmental transfer for medical reasons, in order to preserve the physical and emotional well-being of the complainant.
41.
42. 41. The respondent denied the requested accommodation. Ms. Laureano and Ms. Escandón indicated that the accommodation could not be granted until a specific form was completed and that the physician needed to detail my condition (clinical picture).
43.
44. 42. On December 20, 2024, the complainant filed a discrimination charge with the U.S. Equal Employment Opportunity Commission (EEOC). Charge number 515-2025-00098.
45.
46. 43. On December 26, 2024, the complainant sent LUMA's reasonable accommodation request form, duly completed by the physician, to Ms. Carmen Laureano and Ms. Ivean Escandón. Said medical certificate reiterated the request for accommodation consisting of the need for an immediate departmental transfer to prevent a deterioration in the complainant's emotional and physical health.
47.
48. 44. On December 30, 2024, the complainant met with Ms. Laureano, who informed her that the reasonable accommodation form had been evaluated, and that if the accommodation recommended by the psychiatrist was due to the same reasons of workplace harassment previously addressed, said request for accommodation was denied due to a "lack of sufficient indicators of workplace harassment" and that the case had already been closed.
49.
50. 45. The complainant reported to the State Insurance Fund, which linked her condition to her work and placed her on medical leave.
51.
52. 46. On February 10, 2025, the complainant returned to work after being discharged with the right to continued treatment (CT).
53.
54. 47. On February 13, 2025, at approximately 6:25 p.m., I received via email from Ms. Ivean Escandón the resolution regarding the reasonable accommodation process. In said

communication, I was informed that if I did not sign the document within five (5) working days, it would be understood that I agreed with its content. It is important to note that the resolution again set forth in writing the denial of the reasonable accommodation request submitted by the complainant.

48. The following day, February 14, 2025, the complainant was summoned to a meeting where she was terminated. Present were Taisha Rosa, Carmen Laureano, and a security officer. She was not given a termination letter, despite requesting one.

49. These events caused the complainant deep anxiety and depression, which led to her being hospitalized again on March 3, 2025.

50. As of the date of the aforementioned dismissal, the Equal Employment Opportunity Commission (EEOC) issued a "Right to Sue" notice, granting the complainant authorization to initiate legal action in the corresponding state and federal forums.

FIRST CAUSE OF ACTION:
Discrimination Based on Sex and Disability

51. The allegations set forth in paragraphs two through fifty of the complaint are incorporated herein as if fully restated.

52. The conduct described herein constitutes a violation of Title VII of the Civil Rights Act, the Americans with Disabilities Act, and the laws of Puerto Rico that prohibit discrimination based on sex, physical or mental disability, retaliation, and workplace harassment in accordance with Act No. 100, 29 L.P.R.A. § 467 et seq., Act No. 69, 29 L.P.R.A. § 1321 et seq., and Act No. 44. Furthermore, the conduct described herein constitutes adverse acts and imposes discriminatory terms and conditions of employment prohibited by Puerto Rico Acts 100, 69, and 44, and federal laws.

53. The complainant belongs to a protected group based on sex and/or disability; she was subjected to harassment, humiliation, discriminatory unequal treatment, and was imposed with discriminatory terms and conditions of employment that culminated in an adverse employment action (termination) based on her sex. Additionally, she is a person with a disability (a medical diagnosis of anxiety and generalized depression) who was dismissed, and the person who replaced her does not belong to the complainant's protected group.

54. The complainant was subjected to a hostile work environment due to her emotional condition, and was denied reasonable accommodation on multiple occasions in a discriminatory manner. She was dismissed in a discriminatory fashion. For these reasons, the respondents owe the complainant the compensation provided by Act No. 100 of June 30, 1959, as amended.

55. As this is a discriminatory dismissal, the complainant seeks back pay from February 2025, plus front pay for a 28-year-old woman, as well as compensation for emotional

damages resulting from the employer's discriminatory actions, for a total estimated at $2,000,000.00, to which the double penalty provided by Act 100 must be added.
74.
75. 56. Lastly, the imposition of mandatory attorney's fees is appropriate in accordance with Act No. 2 and Act 100 at a percentage not less than 15% of the amount awarded.
76.
77. SECOND CAUSE OF ACTION:
78. Retaliation and Workplace Harassment
79.
80. 57. The allegations set forth in paragraphs two through fifty of the complaint are incorporated herein as if fully restated.
81.
82. 58. The conduct described herein is arbitrary and capricious, constituting workplace harassment and a hostile environment in accordance with Act No. 90 of 2020, and retaliation in accordance with Act No. 115 of 2021, as amended, for the complainant having filed a complaint regarding a hostile environment (a protected activity) in opposition to the discriminatory practices of the respondent's Human Resources Office, which resulted in adverse employment actions against the complainant (removal of duties, segregation, and disciplinary sanctions culminating in dismissal).
83.
84. 59. The employer's conduct created a hostile environment by employees institutionally protected by the respondent's Human Resources Office, which repeatedly refused to provide reasonable accommodation to the complainant in violation of its own policies and the law. Such conduct was both intentional and negligent.
85.
86. 60. The complainant was dismissed while receiving treatment from the State Insurance Fund, and the dismissal is therefore considered retaliatory in violation of Act 115.
87.
88. 61. As this was an unlawful and retaliatory dismissal, the complainant seeks back pay from February 2025, front pay until the complainant's retirement age (at 66 years) or reinstatement, and compensation for emotional damages caused by the employer's discriminatory actions, for a total estimated at $2,000,000, plus the double penalty provided under Act 115.
89.
90. 62. Lastly, the imposition of mandatory attorney's fees is appropriate in accordance with Act No. 2 and Act 115 at a percentage not less than 15% of the amount awarded.

THIRD CAUSE OF ACTION:

Law 379 – Workers' Accident Compensation and Retaliation

63. Paragraphs two through fifty of this complaint are hereby incorporated by reference as if fully set forth herein.
64. The conduct described herein is illegal under Act No. 379 (29 LPRA §276), contrary to the job reservation provisions of the Workers' Accident Compensation Act (Act No. 45 of April 18, 1935, as amended; 11 LPRA §1 et seq.), and retaliatory in violation of Act

      No. 115 of 2021, as amended, for the dismissal of an employee with a discharge with the right to continued treatment.
65. Article 8 of Act No. 379, as amended (29 LPRA §276), provides a mechanism for regular employees who have worked for the employer for at least one (1) year to request, in writing, a change in their work location. The employer is required to respond to such request within twenty (20) calendar days from its receipt. For employers with more than fifteen (15) employees at the time of the request (such as LUMA), the response must be in writing. The respondent failed to comply with this obligation, in retaliation for a protected activity, thus warranting the imposition of sanctions for retaliation under the Law.
66. Given that the dismissal was illegal and retaliatory, the claimant seeks back pay from February 2025, front pay until her retirement age (66), or reinstatement to her job, and compensation for emotional damages caused by the employer's illegal conduct, for an estimated total of $2,000,000, plus the double penalty established under Act No. 115.
67. Lastly, the imposition of mandatory attorneys' fees is requested under Act No. 2 and Act No. 115, in an amount not less than 15% of the total awarded.

## FOURTH CAUSE OF ACTION

Unjust Dismissal

68. IN THE ALTERNATIVE, the claims set forth in this complaint are brought under Act No. 80 of May 30, 1976 (29 LPRA §185a). Therefore, paragraphs two through fifty of the complaint are hereby incorporated by reference as if fully set forth herein.
69. The dismissal of the claimant was not based on just cause as required by law to relieve the employer of legal liability. Constructive dismissal is a form of unjust dismissal.
70. The respondents owe the claimant the compensation mandated by Act No. 80, commonly referred to as "severance pay."
71. The severance calculation for an employee who has worked for more than fifteen years and who was employed as of January 2017 equals six months of salary plus an additional three weeks of salary for each year of service (29 LPRA §185a).
72. At the time of her dismissal, the claimant earned an annual salary of Fifty-Seven Thousand Six Hundred Eighty dollars ($57,680.00), a weekly salary of approximately One Thousand One Hundred Nine dollars and twenty-three cents ($1,109.23), and a monthly salary of Four Thousand Eight Hundred Six dollars and sixty-seven cents ($4,806.67).
73. Based on the above, the severance amount totals $18,856.92 in accordance with Act No. 80 of May 30, 1976, as amended. To this must be added a mandatory portion of not less than fifteen percent (15%) for legal fees, bringing the total to $21,856.92.

WHEREFORE, the claimant respectfully requests that this Honorable Court grant the complaint in all respects and order the respondents to jointly and severally pay the amounts owed to the

claimant, plus an additional amount not less than twenty-five percent (25%) for costs and attorneys' fees as provided by current legislation.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 5th day of May, 2025.

*[signature]* 05-06-2025

MÓNICA G. PÉREZ TAVÁREZ